```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MISSOURI
 2                    SOUTHEASTERN DIVISION

 3  UNITED STATES OF AMERICA,

 4        Plaintiff,

 5        vs.                    Cause No. 1:16-CR-00058 AGF

 6  JAMES CLAY WALLER, II,

 7        Defendant.
    ============================================================
 8                     SENTENCING HEARING

 9           BEFORE THE HONORABLE AUDREY G. FLEISSIG
                 UNITED STATES DISTRICT JUDGE
10
                       DECEMBER 19, 2017
11  ============================================================

12                        APPEARANCES

13  For Plaintiff:

14  Mr. Larry H. Ferrell
    Assistant United States Attorney
15  555 Independence, 3rd Floor
    Cape Girardeau, MO 63703
16

17  For Defendant:

18  Mr. John M. Lynch
    LAW OFFICES OF JOHN M. LYNCH, LLC
19  7777 Bonhomme Ave., Suite 1200
    Clayton, MO 63105
20

21
                        Reported by:
22
            Alison M. Garagnani, CCR #475, CSR, RMR, CRR
23                   Official Court Reporter
                  United States District Court
24                555 Independence, Room 3100
                    Cape Girardeau, MO 63703
25                      (573) 331-8832
```

1          (THE PROCEEDINGS BEGAN AT 11:06 A.M.)

2  (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH

3  THE DEFENDANT PRESENT:)

4          THE COURT:  Are you ready to proceed?

5          MR. FERRELL:  The Government is ready, Your Honor.

6          THE COURT:  This matter scheduled before the Court

7  today is the United States of America versus James Clay

8  Waller the Second.  It is Case Number 1:16-CR-0058-1 AGF.

9          And the United States is represented by Assistant

10  United States Attorney Larry Ferrell.

11          And Mr. Waller is present and represented by his

12  attorney Mr. John lynch.

13          This matter is scheduled before the Court today for

14  sentencing following the Defendant's plea of guilty, the plea

15  that was to Count I of the indictment.  The plea that was

16  entered into in this matter is what we call a (c)(1)(C) plea,

17  which means that it is a proposed finding plea agreement by

18  the parties.

19          I did not accept the Defendant's plea at the time

20  that he appeared before me but did advise the parties that if

21  I was not inclined to accept the Defendant's plea and be

22  bound by the parties' plea agreement, that I would so advise

23  the parties.

24          I have had since that time the opportunity to

25  review the presentence report and other matters with respect

1    to this case, and I am willing to accept the Defendant's plea

2    of guilty in this matter and be bound by the parties' plea

3    agreement, but obviously we should go through the

4    proceedings.  I just wanted to let you know it was not my

5    intent to advise you that I was unwilling to abide by that

6    plea agreement.

7             Now, have any victims who were required to be

8    notified of these proceedings, in fact, been notified?

9             MR. FERRELL:  They have been notified, Your Honor.

10   And at the appropriate time, as the Court should request,

11   Jacque Waller's mother, Ruby Rawson, would like to address

12   the Court.

13            THE COURT:  All right.  And she will, of course, be

14   given an opportunity to do so.

15            All right.  Mr. Waller, you may recall my name is

16   Audrey Fleissig.  I'm the district judge to whom your case

17   has been assigned.  I'm going to tell you a little bit about

18   how we're going to proceed here today.  I know I discussed

19   this with you somewhat at the time of your plea as well.

20            Under the sentence Sentencing Reform Act of 1984

21   the United States Sentencing Commission issued guidelines for

22   judges to consider when sentencing someone in a criminal

23   case.  The sentencing guidelines used to be binding on the

24   judges, but now they are applied in an advisory manner.

25            I am still required to arrive at a sentencing

1    guideline range and to consider that range along with other

2    factors at the time of the sentencing.  And in reviewing the

3    parties' plea -- binding plea agreement that is exactly what

4    I have done.

5         So today I will be making calculations under the

6    sentencing guidelines to arrive at a guideline range and

7    consider that range in light of the parties' plea agreement.

8    I will consider the impact of the parties' plea agreement and

9    any other sentencing agreements.

10        Had there been any objections to the presentence

11   report I would have heard those objections and ruled on them,

12   but I did not see objections by either party; is that

13   correct?

14        MR. FERRELL:  That's correct, Your Honor.

15        MR. LYNCH:  That is correct, Your Honor.  We've

16   filed notice of acceptance to the report with the Court.

17        THE COURT:  All right.  I will consider statements

18   by the Assistant United States Attorney and by your attorney,

19   sir.  I will also listen to any statements that you care to

20   make.  And I will also hear from any victims who wish to be

21   heard here today.

22        I will consider whether a non-guideline sentence is

23   appropriate after considering whether a departure up or down

24   under the guidelines themselves is appropriate.

25        And then in evaluating the parties' binding plea

1   agreement I also consider all of the factors in 18 United

2   States Code Section 3553(a) to determine whether a guideline

3   or non-guideline sentence is appropriate.  These factors

4   include the nature and circumstances of the offense and the

5   history and characteristics of the Defendant, the need for

6   the sentence imposed to reflect the seriousness of the

7   offense, to promote respect for the law and to provide just

8   punishment for the offense, to provide adequate deterrence to

9   criminal conduct and to protect the public from further

10  crimes of the Defendant, to provide the Defendant with needed

11  educational or vocational training, medical care or other

12  correctional treatment in the most effective manner.

13          The factors also include the kinds of sentences

14  available, the need to avoid unwarranted differences between

15  similarly situated defendants who are facing similarly

16  situated offenses and the need to provide restitution to the

17  victims.

18          Now, have both parties received and had an

19  opportunity to review the final presentence report?

20          MR. LYNCH:  Yes, Your Honor.

21          MR. FERRELL:  The Government has, Your Honor.

22          THE COURT:  All right.  Mr. Lynch, have you

23  reviewed that with your client?

24          MR. LYNCH:  I have, Your Honor.

25          THE COURT:  All right.  As set forth in the

1   presentence report -- I'm sorry, Mr. Waller, did you need to

2   speak with your attorney?

3             THE DEFENDANT:  I have.

4             THE COURT:  All right.  As set forth in the

5   presentence report, under the sentencing guidelines we begin

6   at a base offense level of 43, and that is by employing the

7   cross-reference on Section 2A6.2, which requires that we

8   cross-reference another section if the offense involved the

9   commission of another offense and we apply the greater of

10  those sections, which in this case is section 2A1.1, which is

11  murder in the first degree, which is how we arrive at the

12  base offense level of 43.

13            From that pursuant to the terms of the plea

14  agreement two levels are deducted for Mr. Waller's acceptance

15  of responsibility taking us to a total offense level of 41.

16            With respect to the criminal history Mr. Waller has

17  three prior criminal convictions, only one of which gives

18  rise to criminal history points under the guidelines, and

19  that is the conviction in 2011, which has -- carries three

20  criminal history points for a total of three points placing

21  Mr. Waller in Criminal History Category II.

22            At a total offense level of 41 and a Criminal

23  History Category of II the sentencing guideline range is 360

24  months to life.

25            Now, are both parties in agreement with respect to

1   those guidelines calculations?

2           MR. FERRELL:  The Government is, Your Honor.

3           MR. LYNCH:  Yes, Your Honor.

4           THE COURT:  All right.  I therefore adopt the

5   presentence report as my findings of fact and legal

6   conclusions with respect to the advisory sentencing

7   guidelines.  Now, under Local Rule 13.05 it is the procedure

8   of this Court to hold a bench conference in every plea and

9   every sentencing hearing.

10          We will now conduct the bench conference, and this

11  portion of the transcript of this hearing will be filed under

12  seal.

13          And do you have the headphones here as well?

14  That's how we conduct these bench conferences.

15          All right.  So, Mr. Waller, this is what's going to

16  happen here.  Mr. Waller, what's going to happen here is in a

17  minute is the two attorneys are going to come up here and

18  speak to me, and I'm going to ask you at that time to put

19  those headphones on, and we are going to conduct a discussion

20  off the record -- off the public record.

21          And the first thing I'm going to ask you is if you

22  can hear me.  And I just want you to nod your head for yes or

23  shake your head for no, because if you say something, I may

24  not be able to hear you.  And if at any time you don't hear

25  or you don't understand what I'm saying or at any time you

1    need to speak with your attorney, then I want you to just

2    raise your hand, and I will send your attorney back to speak

3    with you; okay?

4               THE DEFENDANT:  Uh-huh.

5               THE COURT:  All right.

6               (Proceedings were held at side bar, outside the

7    hearing of the jury.)

8               (PURSUANT TO LOCAL RULE 13.05, A BENCH CONFERENCE

9    WAS HELD ON THE RECORD AND PLACED UNDER SEAL, AFTER WHICH THE

10   FOLLOWING PROCEEDINGS CONTINUED IN OPEN COURT:)

11              THE COURT:  Now, Mr. Waller, can you hear me?

12              THE DEFENDANT:  Uh-huh.

13              THE COURT:  He has said, "Yes."  And I assume we

14   went through this process at the time of your plea as well.

15   We do this in every plea and every sentencing.  We discuss

16   whether a Defendant is or is not providing cooperation to the

17   Government:  Do you understand that, sir?

18              THE DEFENDANT:  Yes.

19              THE COURT:  He has said, "Yes."  And you understand

20   what I mean by cooperation, sir?

21              THE DEFENDANT:  I provided cooperation.

22              THE COURT:  Okay.  So we're going to have an issue

23   here, folks.

24              MR. LYNCH:  Maybe I can make the statement if the

25   Court would allow and that would clarify the issue for

1    Mr. Waller.

2         THE COURT:  Mr. Waller, are you able to hear your

3    attorney here, sir?

4         THE DEFENDANT:  Yes.

5         MR. LYNCH:  Mr. Waller indeed did sit down with a

6    United States Attorney's Office in another jurisdiction for

7    purposes of providing information relating to an unrelated

8    crime.  Mr. Waller's position was that in return for that

9    particular offer he was to receive some sort of cooperation.

10        However, he also understands that with respect to

11   this particular case there is no offer of cooperation such

12   that he receives a substantial assistance departure motion by

13   the Government.  So he understands and is clear that the

14   Government at this juncture is not filing a motion to get

15   credit for cooperation.

16        Does that make sense?

17        THE COURT:  Mr. Ferrell, is there anything that you

18   want to add to this?

19        MR. FERRELL:  Other than the fact that it's my

20   understanding that there is no motion at this particular

21   point we think -- we believe factually and legally there's no

22   basis for the motion.

23        Having talked with the U.S. attorneys and

24   investigators involved in that matter out there it's my

25   understanding today that there is no motion before the Court

1  asking to go outside the plea agreement, that the defense is

2  here today to request a sentence of 420 months be imposed and

3  is not requesting a downward departure.

4          THE COURT:  All right.  And, Mr. Waller, I'm going

5  to tell you the statement that I have received here by the

6  prosecutors in this case and that is a statement stating that

7  you have not provided substantial assistance to the

8  Government certainly at least with respect to the United

9  States Attorney's Office here and that in connection with

10  your sentencing here today that the Government will not be

11  filing a motion for a downward departure from this 420-month

12  agreed sentence on your behalf:  Do you understand that, sir?

13          THE DEFENDANT:  I did -- I didn't tell the

14  investigators -- I did tell the investigators the other

15  person that was involved in this.  I did tell them that.

16  And, yes, I mean, I understand.

17          THE COURT:  All right.  And you understand,

18  Mr. Waller, that to the extent that you may have provided

19  some information to the prosecutors with respect to this

20  particular case, the case pending against you --

21          THE DEFENDANT:  Yeah, I'm talking about that one.

22          THE COURT:  All right.  And you understand that the

23  decision whether to file a motion for substantial assistance

24  and whether to accept your substantial assistance in

25  connection with the charge that is pending in this court is

1    solely up to the prosecutors:  Do you understand that, sir?

2         THE DEFENDANT:  Uh-huh.

3         THE COURT:  And you understand that I can't make

4    them agree to accept your cooperation in connection with the

5    charge that is pending against you in this court:  Do you

6    understand that?

7         THE DEFENDANT:  Uh-huh, yes.

8         THE COURT:  And you understand that whatever

9    discussions you had with the prosecutors in connection with

10   this current charge was taken into account by the prosecutors

11   when they entered into this plea agreement with you:  Do you

12   understand that?

13        THE DEFENDANT:  Sure.  Yeah.

14        THE COURT:  All right.  So you understand that this

15   current plea agreement does not provide for you to be

16   receiving any benefit other than what is reflected in this

17   binding plea agreement in connection with any cooperation

18   that you provided to the United States Attorney's Office for

19   the Eastern District of Missouri:  Do you understand that?

20        THE DEFENDANT:  Okay.  Yes.

21        THE COURT:  And you understand that you will not be

22   receiving any -- any downward departure from the agreed

23   sentence amount in connection with any cooperation that you

24   provided to the prosecutors in this case?

25        THE DEFENDANT:  Okay.

```
 1              THE COURT:  All right.  And do you have any

 2    question about that, sir?

 3              THE DEFENDANT:  Pardon?

 4              THE COURT:  Do you have any question about that?

 5              THE DEFENDANT:  No.

 6              THE COURT:  All right.  And so the statement that I

 7    have here is that you have not provided substantial

 8    assistance and that no motion for a downward departure will

 9    be filed on your behalf in connection with the instant

10    charge; isn't that correct?  Is that your understanding as

11    well?

12              THE DEFENDANT:  Okay.

13              THE COURT:  All right.  Now, I am aware, sir, that

14    you filed this pro se motion for a Rule 35 motion in

15    connection with some -- some cooperation that you believe you

16    provided in another district; is that correct, sir?

17              THE DEFENDANT:  Yes.  On both -- I'm supposed --

18    the guy out there put me in harm's way, and they told me if I

19    would -- if I was to do the things that I did, that they

20    would help me.

21              THE COURT:  And you understand, sir, that that --

22    those matters are not before me now?

23              THE DEFENDANT:  I understand that.

24              THE COURT:  Do you understand that?

25              THE DEFENDANT:  I do now, yes.
```

1          THE COURT:  You understand that was provided to

2     another office and that that procedure of a Rule 35 motion is

3     one that can apply to a sentence after it has been imposed:

4     Do you understand that?  Do you understand that, Mr. Waller?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  And so I don't know what has or hasn't

7     happened with respect to that other office.

8          Mr. Ferrell, his understanding is that nothing

9     would impact this sentencing here today.

10          Mr. Ferrell, do you have any understanding one way

11     or another whether the possibility of a Rule 35 motion from

12     that district is still an open question?

13          MR. FERRELL:  It is not, Your Honor.  I appreciate

14     the opportunity to clarify the record.  I spoke directly with

15     the Assistant United States Attorney handling that

16     investigation as well as the investigating officers.

17          Mr. Waller provided information he had about an

18     assault which occurred there.  This assault occurred on video

19     camera in front of correctional officers, and the defendant

20     in that case admitted his crime.

21          So according to -- well, my evaluation of the facts

22     and evaluation of the facts and the facts provided by the

23     Assistant United States Attorney Mr. Waller's providing the

24     statements in no way rises to the level of substantial

25     assistance as with regard to filing a motion for downward

1    departure.

2             THE COURT:  All right.  And, Mr. Waller, have you

3    heard what just has been said with respect to the Rule 35 pro

4    se motion that you filed?

5             THE DEFENDANT:  Yes.  That's beyond the facts.

6             THE COURT:  All right.

7             THE DEFENDANT:  Mr. Ferrell is apparently not aware

8    of all that took place, or he just doesn't want to help me

9    for what happened, because I was put in some danger --

10   ongoing danger because of the -- of the gang members that

11   were involved.

12            I'm getting -- I'm unfortunately getting ready to

13   go back into federal prison and not provided protection,

14   because those gang members have been convicted, and now

15   because of their convictions there is nothing set in place to

16   protect me.

17            MR. LYNCH:  Mr. Waller, can you hear me?

18            THE DEFENDANT:  Uh-huh.

19            MR. LYNCH:  Mr. Waller has been apprised of what

20   Mr. Ferrell just informed the Court with respect to the

21   nature of any cooperation offer in the Southern District of

22   California.

23            With respect to any safety concerns Mr. Waller has

24   I've already notified the U.S. Marshals that in the event

25   there would be a safety issue the U.S. Marshals are possessed

1    of sufficient resources to accommodate any issue with respect

2    to Mr. Waller's residency in the Federal Bureau of Prisons.

3            So he has been aware made aware of that phenomenon.

4    Notwithstanding, I do believe that he is well aware that with

5    respect to this case there is no motion for a departure by

6    the Government for purposes of providing cooperation.

7            Mr. Waller has also been made aware that his own

8    pro se motion to compel, a 35(b) motion in an unrelated

9    matter, was, A, inapplicable in this particular case and, B,

10   premature in light of the fact that he had not been sentenced

11   yet.

12           So with respect to both aspects -- A, cooperation

13   in this case, B, cooperation in this California matter --

14   Mr. Waller has been made aware the answer is simply no at

15   this juncture.

16           THE COURT:  All right.

17           THE DEFENDANT:  Yes.

18           THE COURT:  Am I -- and you understand that,

19   Mr. Waller?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And, Mr. Lynch, will you be in a

22   position to following the sentencing in this matter to

23   discuss with Mr. Waller what, if any, recourse he has with

24   respect to any cooperation that he provided to the other

25   district?

1          MR. LYNCH:  Yes, ma'am.  And absolutely I've

2    already informed Mr. Waller that I would do that for him

3    following the sentencing today.

4          THE COURT:  And you understand that as well,

5    Mr. Waller?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Is there anything further

8    that needs to be placed on the record with respect to

9    cooperation?

10          MR. FERRELL:  No, Your Honor.

11          MR. LYNCH:  Not on behalf of the Defendant, Your

12    Honor.

13          THE COURT:  All right.  Then we will return to the

14    open record, and you can go ahead and take those headphones

15    off, sir.

16          Now, as I stated, in the Statute Section 3553 --

17          MR. LYNCH:  Your Honor, I hate to interrupt, but

18    Mr. Waller says he's not feeling well and would like a glass

19    of water.

20          THE COURT:  That's fine.

21          MR. LYNCH:  If I can find a glass of water

22    somewhere.

23          THE COURT:  That's a different matter.

24          (A discussion was held off the record.)

25          THE COURT:  Are you okay, Mr. Waller?

| | |
|---|---|
| 1 | THE DEFENDANT: Yeah. |
| 2 | THE COURT: All right. Now, as I stated, the |
| 3 | Statute Section 3553 also lists the factors under the statute |
| 4 | that I should consider in setting the appropriate sentence |
| 5 | and in evaluating the propriety of the parties' binding plea |
| 6 | agreement. |
| 7 | And, Mr. Lynch, would you now like to speak on |
| 8 | Defendant's behalf both by way of allocution and to address |
| 9 | those factors. After that time I will give you an |
| 10 | opportunity, Mr. Waller, to make a statement. And I will |
| 11 | hear from any victims who wish to make a statement. And |
| 12 | finally I will hear from Mr. Ferrell. |
| 13 | MR. LYNCH: Yes, Your Honor. Thank you. And I |
| 14 | will keep it brief. |
| 15 | Your Honor, as the Court is fully aware, this case |
| 16 | comes from a very difficult crime that occurred in this |
| 17 | community. I would ask the Court to accept the 420-month |
| 18 | joint recommended sentence. It's a substantial sentence, |
| 19 | Your Honor. |
| 20 | I would also note that it fits squarely within the |
| 21 | designated guideline range. So if the Court is going to |
| 22 | engage in a comparative analysis for purposes of avoiding an |
| 23 | unwarranted disparity, the requested sentence would not |
| 24 | create such an unwarranted disparity if the Court were |
| 25 | inclined to further engage in such an analysis. |

1          I would say this from Mr. Waller's point of view.

2     He has difficulty speaking when he's nervous.  So he's

3     thinking what he wants to say, but it doesn't come out as far

4     as being articulated in the way he would like it to, so I'm

5     speaking on his behalf in many respects.

6          This particular requested sentence was also the

7     product of much negotiation between the Government and myself

8     over the course of several months.  I think it is a fair and

9     equitable result to a particularly egregious case.

10         But the most important aspect Mr. Waller wanted me

11    to emphasize to the Court -- and I'm not going to get into

12    the facts and circumstances underlying the crime at issue

13    because of the sensitivity associated with that.  Mr. Waller

14    wants to provide much needed closure to his children, to the

15    family of the deceased and all the parties that were affected

16    by this particular crime.

17         He has readily accepted responsibility for this

18    crime not only in the state case but also in this case.  And

19    I think the Court should acknowledge that acceptance with

20    respect to imposing sentence in this case and give everybody

21    the closure they need in this close-knit community.

22         Thank you, Your Honor.

23         THE COURT:  Thank you.

24         Mr. Waller, it is now your opportunity to make a

25    statement if you wish.  Please understand, sir, you are not

1    required to say anything at all.  Your attorney has spoken on

2    your behalf, but it is your right to do so.  And I will hear

3    anything that you wish to say, sir.

4         THE DEFENDANT:  Okay.  Is this the only time I'm

5    going to get to talk with everyone?

6         THE COURT:  Yes, sir.

7         THE DEFENDANT:  All right.  Well, I want to start

8    off with in -- in respect to my -- to the family.  Can I look

9    back?

10        THE COURT:  You may.

11        THE DEFENDANT:  Your Honor, I had a -- had a

12   beautiful family, but for -- I had beautiful kids, and I

13   should not have had to accept adultery.  I shouldn't have

14   had -- I shouldn't have had to accept it.  I shouldn't

15   have -- I should not have accepted that kind of stuff.  And

16   when I was put in that position, obviously I didn't handle it

17   very well at all.  And she -- it just got out of hand.

18        You guys have showed me no mercy, and I can

19   appreciate that.  I also -- I want to -- my kids, all I --

20   all I wanted to be was their dad.  That's it.  I didn't want

21   to share them with anybody.  And now unfortunately -- and I

22   understand you have kept them -- you kept my kids from my

23   family that had nothing to do with this.

24        And there was -- there was a lot of promises made

25   by the prosecutor over there and here, and unfortunately for

1   me it's -- they just -- it just wasn't -- it's like they had

2   amnesia, and I can appreciate that too.

3            And I'm sure you've said a lot of mean things about

4   me.  And I can -- and it's -- it's -- some of it's true.

5   Some of it ain't.  And I can appreciate that the -- I can

6   appreciate the fact that I want to get this -- I want to get

7   this closure.  I hope you-all are getting closure.  I -- I --

8   I hope you have got closure.

9            I miss my kids terribly.  I have -- I have -- I --

10  I have wrote them a thousand letters, and I know they

11  haven't -- they haven't seen one of them, not one letter.

12  And, you know, I get pictures of them, and I get to see

13  them -- I get to see them grow up on Facebook.

14           Unfortunately -- and unfortunately my wife will

15  never get to see them, not at all.  And I -- and I -- and I

16  can tell you that that was not what I wanted.  I wanted us to

17  have our family, and our kids deserved to be a family.  They

18  did deserve to be a family.  And that wasn't my choice.

19           That was -- but I did -- I did make some bad

20  choices.  I made a mistake.  And I've accepted -- I accepted

21  full -- I have accepted full responsibility, every bit of it.

22           And I can appreciate all of the things that you've

23  done.  I do appreciate, Cheryl, you taking care of -- of --

24  of my babies.  I miss them very much.  Thanks.

25           THE COURT:  Thank you.

1        Mr. Ferrell, are there some victims who would like

2    to be heard in this matter?

3        MR. FERRELL:  Yes, Your Honor.  Ms. Ruby Rawson

4    would like to address the Court.  And Ms. Rawson is the

5    mother of Jacque Sue Waller.

6        MS. RAWSON:  All right.  I stand here today with

7    mixed emotions.  For almost 18 years he was a part of our

8    family.  We celebrated birthdays, holidays, anniversaries and

9    took vacations together.  We had good times.

10        And speaking of anniversaries, yesterday would have

11    been yours and Jacque's, your 24th.  Remember how you would

12    always remind us how many years you'd been in the family?

13    How and why did it have to come to this?

14        And for the last year of Jacque's life when she was

15    telling us that you were going to kill her I couldn't believe

16    what she was telling me.  I said, "Doesn't he realize we

17    won't let him get away with it?"  She said, "Mom, he thinks

18    he's smarter than everyone. "

19        I remember one time when she called, and she was so

20    scared, and I told her to call 911.  She said she wouldn't do

21    it, because she said it would hurt your chances for getting a

22    pilot's license, and she wanted you to have the opportunity

23    to get a good job.

24        Her dad wanted to come down with her brother to

25    change your attitude, but she refused saying that it would

1   only make matters worse.  How much worse could they have

2   gotten?

3            We didn't know how evil you had become.  She also

4   told me you wouldn't let her live because she knew too much

5   on you.  She said you had killed someone before and you would

6   do it again.  She was so scared that she said, "Mom, I just

7   don't want to be dead."

8            Then we got the call on June 1st that no mother

9   ever wants to hear.  Cheryl told us, "Mom, he did it.  He's

10  killed her."  You had killed our precious Jacque, the mother

11  of your children.

12           For two long years we had to worry about what you

13  had done with her.  Stan had every intention of trying to

14  kill you, and he would have except then that he would never

15  find Jacque.  And after a long discussion with the sheriff

16  and Lieutenant James, he decided to let the law deal with

17  you.

18           We could not tell the kids we knew it was you that

19  had killed her.  When we did tell them, it was heartbreaking.

20  The kids were so upset and wondering if you would come after

21  them and kill them too.

22           On June 8th, 2013, we had to bury our precious

23  Jacque on our fiftieth wedding anniversary.

24           And now after six long years we will get the

25  satisfaction of knowing you will never be a part of your

1   children's lives.  You won't get to see how great Addison is

2   at basketball and soccer or what a great soccer player Maddox

3   is or Avery in gymnastics and dance.

4           Grandpa was with Avery when she caught a 6-pound

5   bass and got a nice buck last season.  Maddox got a deer two

6   years ago, and he has the makings of a really good soccer

7   player Addison is a natural athlete, and she will be

8   beautiful no doubt.

9           Bob and Cheryl have taken over the role of mother

10  and father, and your name is seldom ever mentioned.

11          And we have never tried to keep the kids away from

12  your family.  Your family has never talked to us or asked us

13  about seeing the kids.  Never.

14          Jacque is talked about often and lovingly just like

15  you never even existed except as a nightmare, or, as Jacque

16  had to say, just a sperm donor.

17          Two months ago we picked up the kids from school,

18  and the latest news about your plea agreement came on the

19  radio.  Avery said, "They're talking about our dad" and

20  listened very intently to what was being said and said, "I

21  knew he strangled her, but I didn't know he beat her to

22  death.  Why can't they do to him what he did to her?"  So you

23  see, they know how you truly are.

24          It's so sad it had to come to this.  You could have

25  just let her get the divorce, but you chose to throw her

1   away.  You had a beautiful family, but you threw them all

2   away.

3        Jacque did come back to tell us good bye one day.

4   We were at Cheryl's house watching the girls while Cheryl and

5   Maddox had gone to town.  No doors opened or closed, but in a

6   very clear voice we heard Jacque say, "I'm home."  Avery was

7   in her bedroom.  She came out, and she said, "I heard Cheryl

8   say she was home."

9        Cheryl and Jackie's voices were so much alike I

10  couldn't tell them apart on the phone.  There is no doubt

11  that she just wanted to let us know she is nearby and only a

12  heartbeat away.

13       You may have killed her physical body, but you will

14  never kill her spirit.  I wouldn't be surprised if she was

15  here today in spirit.  She always did have a great sense of

16  humor.

17       We are getting old, and I doubt we'll ever see you

18  again.  But you can go off to your prison cell assured that

19  we wish you nothing but bad things.  That's not very nice of

20  us, but what you did to our family is unforgivable.

21       I pray that God forgives you, because I can't.  I

22  may in time, but right now I just can't.

23       THE COURT:  Mr. Ferrell, are there any further

24  victims who would like to be heard today?

25       MR. FERRELL:  We did not plan on anyone else

1    addressing the Court.  I don't know in light of the remarks

2    that have been made if there was any other members of the

3    family that wish to address the Court.

4               With the Court's permission --

5               THE COURT:  You may.

6               MR. FERRELL:  -- Mrs. Cheryl Brenneke would like to

7    address the Court.

8               MS. BRENNEKE:  This won't be long because I haven't

9    prepared anything.

10              So much of what you just said is just laughable.

11   Acting as if you had not had several affairs.  Should she

12   haven't had accepted adultery, Clay?  Should she have

13   accepted that?  Don't act like it didn't happen.  Don't try

14   to paint yourself with a good brush.  She should not have had

15   to accept all of your adultery and abuse, manipulation and

16   abuse.

17              What about the six holes you dug before you used

18   the last one?  Six holes.  Don't act like it was just some

19   crazy notion that you snapped one day.  That is not what

20   happened.  It was cold.  It was calculated.  Evil.  That's

21   it.  Evil sits before me.  Shame on you.  Shame on you.

22              THE COURT:  Are there any further victims that

23   would like to be heard?

24              MR. FERRELL:  No, Your Honor.

25              THE COURT:  Mr. Ferrell.

1          MR.  FERRELL:  If it please the Court, Your Honor.

2     There is so much that could be said right now, but in light

3     of the presentence report and in light of the statements made

4     by the victim's family and in light of the binding plea

5     agreement which has been accepted by this Court I'm going to

6     exercise discretion and self-restraint.

7          I would simply like to say that despite whatever

8     statements the Defendant may wish to make here in the

9     courtroom or otherwise the Court is aware of the facts in

10    this case as set out in the presentence report and that

11    Jacque Sue Waller was the victim of domestic abuse for years

12    and years, and Clay Waller made the decision to take her

13    life, and he told her in advance that if she ever filed for

14    divorce, it would be signing her own death warrant.

15         He thought about this for months.  He dug the grave

16    the day before and spent the night in the home of his

17    girlfriend in Illinois before he committed this murder.  And

18    in the course of this murder he brutally beat and strangled a

19    loving mother and beautiful young woman and left their three

20    children without parents.

21         There is absolutely -- the only thing the

22    Government would say at this point with regard to the plea

23    agreement is it's regrettable that the death penalty is not

24    available in this case, because in the opinion of the

25    Government that would be the only true sentence that should

1   be imposed, but that is not available.

2          We ask the Court simply to accept the plea

3   agreement in this case and impose the sentence of 420 months,

4   because we believe it's in the best interest of the people of

5   the United States of America to resolve this case in this

6   matter, and we ask the Court to sentence this Defendant to

7   420 months in the Federal Bureau of Prisons.

8          THE COURT:  Thank you.

9          Is there anything further from either of the

10  parties?

11         MR. LYNCH:  Not on behalf of the Defendant, Your

12  Honor.

13         THE COURT:  Anything further,

14  Mr. Ferrell?

15         MR. FERRELL:  No, Your Honor.

16         THE COURT:  All right.  Then I will now proceed

17  with respect to the sentencing in this matter.

18         There's no good -- there is no good answer here.

19  There's no good result here.  There are times when our system

20  of justice cannot do all that we would hope it can accomplish

21  for us, because we can't, of course, ever bring somebody back

22  to life.  And what our system of justice has to offer us in

23  situations like this is inadequate, but it's the best we have

24  to offer.

25         I have reviewed this matter carefully.  It is a

1  tragic matter, but I do find that in this instance the

2  sentence -- the sentencing guideline range properly reflects

3  the factors that I need to consider under the statute.

4  I have looked at the Defendant's background and

5  history.  I have taken into account his own difficult

6  childhood, his own mental health issues, and I have taken

7  that into account in evaluating whether this is or is not an

8  appropriate sentence.

9  I have also tried to take into account the nature

10  and circumstances of this offense, which could not possibly

11  be any more tragic than they are to have a young woman lose

12  her life -- lose her life at the hands of her husband and to

13  leave three children essentially without parents.  The nature

14  and circumstances of the offense are as tragic as any that

15  could ever come before the Court.

16  And, nevertheless, I believe balancing all of the

17  factors here taking into account Mr. Waller's age at the age

18  of 47, taking into account the sentence that has been agreed

19  to by the parties of 420 months, which is 35 years if I'm not

20  incorrect, Mr. Waller will be in his eighties before the time

21  that this sentence or close to -- I realize he's been in

22  prison for -- he's been in custody for a couple of years, but

23  he'll be close to 80 years old at the time that that 35 years

24  runs.

25  And it appears, I believe, the family has been

1    represented in this matter vigorously and appropriately by

2    the United States Attorney's Office and that the United

3    States Attorney's Office has attempted to take into account

4    what is also to be achieved from closure in this matter.

5         And for all of those reasons I believe that a

6    sentence of 420 months is sufficient but not more than

7    necessary to achieve the statutory sentencing objectives.

8         I can't say for sure, Mr. Waller, in light of your

9    comments here today that it fully holds you accountable,

10   because you still seem to think that some of what has

11   happened here was somehow the fault of Jacque Waller.  And if

12   that is your thinking, I don't know if that's what you

13   intended when you made some of the comments that you did, but

14   that's kind of what it sounded like, sir.

15        THE DEFENDANT:  Do you mind if I say something

16   about that?  I mean, because -- because of my speech it's

17   sometimes -- I say things that are an easier word to get out.

18        THE COURT:  All right.  So am I correct, sir, in

19   stating that it was not your intent here today to suggest

20   that Ms. Waller was -- was at all to blame for what occurred

21   here?

22        THE DEFENDANT:  Oh, no, it was -- it was actually

23   all my fault.  I'm taking full responsibility for that.

24        THE COURT:  All right.  So thank you, sir.  I

25   appreciate you saying that.  And I hope that that

1    clarification by you is helpful to the family and friends of

2    the victim in this matter.

3              But, in any event, I do believe that a sentence of

4    420 months is sufficient but not more than necessary to

5    achieve the statutory sentencing objectives.  I trust that it

6    will, in fact, hold you accountable, Mr. Waller, and deter

7    you from any similar acts in the future, that it will I hope

8    deter others from engaging in similar conduct, and I believe

9    that this sentence is -- is consistent.  I believe it does

10   not achieve -- it does not create any disparity among

11   similarly situated defendants who are facing similarly

12   situated offenses.

13             I do believe that in light of the lengthy term of

14   the sentence here that it will, in fact, protect the public

15   from further crimes of the Defendant and serve to detour both

16   you and others from similar conduct in the future.

17             And it is also my hope, sir, that while you are in

18   the Bureau of Prisons you will receive educational and

19   medical and mental health treatment that you may need while

20   you are in the Bureau of Prisons.

21             And, perhaps, if nothing else for you, sir, you

22   have heard that it is not the desire of Ms. Waller's sister

23   to keep -- keep your family from seeing your children.  And

24   35 years is a long time, and we'll just have to see how

25   things develop over the course of those years.

1          Now, does either party have any objections to my

2   consideration of the statutory sentencing factors or believe

3   there's any particular factor I failed to properly consider?

4          MR. FERRELL:  The Government does not, Your Honor.

5          MR. LYNCH:  One moment, Your Honor.

6          THE COURT:  Yes.

7          MR. LYNCH:  We have no objection, Your Honor.

8          THE COURT:  All right.  And so the sentence that I

9   intend to impose here is pursuant to the binding plea

10  agreement in this matter, a sentence of 420 months to be

11  followed by five years of supervised release.

12         It is my understanding that there is no request

13  being made with respect to restitution; is that correct?

14         MR. FERRELL:  That's correct, Your Honor.

15         THE COURT:  There is, of course, a special

16  assessment of $100 that I must impose as a part of this

17  sentence.

18         And, of course, the Defendant has agreed as part of

19  his plea agreement to certain conditions of forfeiture that

20  will also be a part of his judgment in this matter.

21         Now, is there any reason that I should not proceed

22  with respect to the formal statement of the sentence at this

23  time?

24         MR. LYNCH:  Your Honor, I would only add that part

25  of our requested sentence includes that the sentence be

1   imposed served concurrently with the sentence imposed in the

2   Circuit Court of Cape Girardeau County under Docket Number

3   12-CG-CR-00686-01.

4           THE COURT:  That is my understanding as well, and

5   that also was a part of the parties' binding plea agreement,

6   and that is my intent to order that that sentence run

7   concurrently.

8           MR. LYNCH:  Thank you, Your Honor.

9           THE COURT:  Anything further before I formally

10  state the sentence?

11          MR. FERRELL:  Nothing further from the Government,

12  Your Honor.

13          MR. LYNCH:  Not on behalf of the Defendant, Your

14  Honor.

15          THE COURT:  Pursuant to the Sentencing Reform Act

16  of 1984 and the provisions of 18 U.S.C. 3553(a) it is the

17  judgment of the court that the Defendant, James Clay Waller,

18  II, is hereby committed to the custody of the Bureau of

19  Prisons to be imprisoned for a term of 420 months.

20          This sentence shall run concurrent to the sentence

21  the Defendant is currently serving for the State of Missouri

22  in Docket Number 12-CG-CR-00686-01 pursuant to the provisions

23  of the United States Sentencing Guideline Section 5G1.3.

24          Upon release from imprisonment the Defendant shall

25  be placed on supervised release for a term of five years.

1          Within 72 hours of release from the custody of the

2    Bureau of Prisons the Defendant shall report in person to the

3    probation office in the district to which the Defendant is

4    released.

5          As part of your supervision you must comply with

6    the following mandatory conditions of supervision:  You must

7    not commit another federal, state or local crime.  You must

8    not unlawfully possess a controlled substance.  You must

9    refrain from any unlawful use of a controlled substance.  It

10   is recommended that the mandatory drug testing be suspended

11   based upon the determination that you pose low risk of future

12   substance abuse.

13         You must cooperate in the collection of DNA as

14   directed by the probation office if the collection of such

15   sample is authorized pursuant to 42 U.S.C. Section 14135(a).

16         For a domestic violence crime as defined in 18

17   U.S.C. Section 3561(b) you must participate in an approved

18   program for domestic violence.

19         As part of your supervision you must comply with

20   the standard conditions of supervision that have been adopted

21   by this Court.

22         And, Mr. Lynch, I know the standard conditions were

23   set forth in detail in the presentence report as well as the

24   reason for each condition.  Did you have an opportunity to

25   review those with your client?

1        MR. LYNCH:  I did, Your Honor.

2        THE COURT:  Do you wish me to read those standard

3    conditions, or do you wish to waive the reading of the

4    standard conditions?

5        MR. LYNCH:  We'll waive the reading of the standard

6    conditions, Your Honor.

7        THE COURT:  All right.  Thank you.

8        As part of supervision you must comply with the

9    following additional special conditions:  If it is determined

10   there are costs associated with any services provided, you

11   shall pay those costs based on a co-payment fee established

12   by the probation office.

13       You must participate in a mental health treatment

14   program and follow the rules and regulations of that program.

15   The probation officer, in consultation with the treatment

16   provider, will supervise your participation in the program on

17   matters such as provider, location, modality, duration,

18   intensity, et cetera.

19       You must submit your person, property, house,

20   residence, vehicle, papers, computers as defined in 18 U.S.C.

21   Section 1030(e)(1), other electronic communications or data

22   storage devices, or media, or office, to a search conducted

23   by a United States Probation Officer.

24       You must warn any other occupants that the premises

25   may be subject to searches pursuant to this condition.

1          The probation officer may conduct a search under

2     this condition only when reasonable suspicion exists that you

3     have violated a condition of supervision and that the areas

4     to be searched contain evidence of this violation.

5          The Court finds that the Defendant does not have

6     the ability to pay a fine.

7          It is further ordered that the Defendant shall pay

8     to the United States a special assessment of $100, which

9     shall be due immediately.

10          And, Mr. Lynch, does the Defendant have any request

11     to make with respect to the Bureau of Prisons?

12          MR. LYNCH:  Your Honor, we would ask the Court in

13     consideration of a recommendation that he be considered for

14     placement at the federal BOP facility in Greenville, Illinois

15     and/or Marianna, Florida.

16          THE COURT:  I'm sorry, Greenville or --

17          MR. LYNCH:  Marianna, Florida.

18          THE COURT:  Marianna, Florida?

19          MR. LYNCH:  Yes.  M-a-r-i-a-n-n-a.

20          THE COURT:  I further request that the Defendant be

21     housed at the Bureau of Prisons' facility in Greenville or in

22     Marianna, Florida.  This request is made to the extent it is

23     consistent with the Bureau of Prisons' policies.

24          And you understand, Mr. Waller, I can't order that

25     you be sent to a particular facility.  I can only make that

1    request, and then that will be up to the Bureau of Prisons.

2            THE DEFENDANT:  Yes.

3            THE COURT:  Now, does either party know of any

4    reason why the sentence should not be imposed as stated?

5            MR. FERRELL:  No, Your Honor.

6            MR. LYNCH:  No, Your Honor.

7            THE COURT:  All right.  Then I order the sentence

8    be imposed as stated.

9            The Defendant is also subject to forfeiture

10   pursuant to the provisions and the agreement of forfeiture

11   that is set forth in detail in the plea agreement that was

12   entered into between the parties.

13           Is there anything further that the United States

14   wishes to place on the record with respect to forfeiture?

15           MR. FERRELL:  Not at this time, Your Honor.

16           THE COURT:  All right.  Then, Mr. Waller, I have

17   just a couple of other matters to state to you.  Obviously,

18   you're going away to prison for a very, very long time.  And

19   when you get released, I won't be around anymore.

20           But I hope when you are in the Bureau of Prisons

21   that you will take advantage of all of the programs that they

22   have to offer you, that you will work on your own mental

23   health issues, that you will try to get control of the anger

24   issues that you obviously have and that you will at some

25   point during this time come to an appropriate place in terms

1    of accepting responsibility for the events that have occurred

2    here.

3            I also want to advise you, sir, that you may appeal

4    your conviction if you believe that your guilty plea was

5    somehow unlawful or involuntary or there was some fundamental

6    defect in the proceedings that was not waived by the guilty

7    plea.

8            Under some circumstances a Defendant also has the

9    right to appeal his sentence imposed, however -- the sentence

10   itself.  However, the Defendant may have waived that right as

11   part of a plea agreement, and you have entered into a plea

12   agreement that waives some or all of your right to appeal the

13   sentence itself.

14           Now, those waivers are generally enforceable, sir,

15   but if you believe that the waiver itself is not valid or

16   doesn't cover some ground that you wish to raise, you may

17   present that theory to the appellate court.

18           You have the right to apply for leave to appeal

19   informa pauperis, which means without payment, and your

20   attorney or the Clerk of Court will prepare a filing notice

21   of appeal upon your request.

22           But please know, sir, that with few exceptions any

23   notice of appeal must be filed within 14 days of the entry of

24   judgment, and I fully expect that judgment to be entered

25   today.

1          And, Mr. Lynch, I ask that you review with your

2     client and properly file the form in compliance with Local

3     Rule 12.07.

4          MR. LYNCH:   Your Honor, may I make my usual record

5     in that regard?

6          THE COURT:   You may.

7          MR. LYNCH:   With respect to the plea agreement

8     filed with this Court on October 5th, 2017, there contained a

9     provision wherein Mr. Waller waived his right to appeal most

10    aspects of this particular matter, including the sentencing

11    imposed if the Court was inclined to accept our binding

12    recommendation.

13         In light of the fact that the Court did, indeed,

14    accept this particular recommendation I have reviewed the

15    notice of compliance with Local Rule 12.07a and again

16    explained to Mr. Waller his appellate rights where

17    applicable, applicable, or if any.

18         Based on discussions, Mr. Waller did, indeed,

19    execute this particular notice advising me that he does not

20    want my office to file a notice of appeal on his behalf, for

21    which I will now file with the Court.

22         THE COURT:   All right.  And, Mr. Waller, is that,

23    in fact, correct that you have advised Mr. Lynch not to file

24    any notice of appeal upon your behalf?

25         THE DEFENDANT:   Yes, ma'am.

1            THE COURT:  All right.  Thank you.  And thank you,

2    Mr. Lynch.

3            MR. LYNCH:  Thank you.

4            THE COURT:  Is there anything further for the

5    Court's consideration?

6            MR. FERRELL:  No, Your Honor.

7            THE COURT:  All right.  Then we'll be adjourned in

8    this matter.  Thank you.

9            (PROCEEDINGS CONCLUDED AT 12:04 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3          I, Alison M. Garagnani, Registered Merit Reporter

 4   and Certified Realtime Reporter, hereby certify that I am a

 5   duly appointed Official Court Reporter of the United States

 6   District Court for the Eastern District of Missouri.

 7          I further certify that the foregoing is a true and

 8   accurate transcript of the proceedings held in the

 9   above-entitled case and that said transcript is a true and

10   correct transcription of my stenographic notes.

11          I further certify that this transcript contains

12   pages 1 through 40 inclusive and that this reporter takes no

13   responsibility for missing or damaged pages of this

14   transcript when same transcript is copied by any party other

15   than this reporter.

16          Dated Cape Girardeau, Missouri, this 29th day of

17   September, 2018.

18

19
     -----------------------------------------
20   /s/Alison M. Garagnani
     Alison M. Garagnani, CCR, CSR, RMR, CRR
21   Official Court Reporter

22

23

24

25
```